UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SEKOU HARRIS | ) | Civil No. 10-2215 BTM  (NLS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | REPORT AND RECOMMENDATION |
| v. | ) | FOR ORDER DENYING PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS |
| J. TIM. OCHOA | ) | |
| | ) | |
| Defendants. | ) | [Doc. No. 1] |
| | ) | |

## I.    INTRODUCTION

Petitioner Sekou Harris ("Petitioner") is a California prisoner serving a prison term of eight years, following his conviction  for one count of selling cocaine base (Cal. Health & Safety Code § 11352(a)) and one count of possession of cocaine base for sale (Cal. Health & Safety Code § 11351.5). Petitioner has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging the trial court's decision to exclude a defense witness due to violation of the discovery rules.  The Petition puts forth seven grounds for habeas relief regarding the trial court's exclusion of the defense witness. Although Petitioner does not specify which rights he claims were violated, the  due process right to a fair trial under the Fifth Amendment and the right to present a defense under the Sixth Amendment can be affected by the exclusion of evidence.  The seven grounds listed in the Petition are:

> 1) The trial court violated state law and appellant's constitutional right to present a defense [sic] from testifying without finding a willful violation of the discovery rules; 2) The trial court should not have considered prejudice to the codefendant in deciding whether to preclude the testimony of appellant's witness; 3) Appellant did not wilfully violate the discovery rules by notifying the people during trial of his intent to call Adams as a witness; 4) The people would not have been

1

1   irremediably or significantly prejudiced by notice during the trial from appellant of his
    intent to call Adams as a witness; 5) In either case, the trail [sic] court erroneously [sic]
2   weighed the harm the codefendeant [sic] might suffer if Adams was allowed to testify; 6)
    The trial court violated appellant's constitutional rights by precluding Adams from
3   testifying; and  7) Preclusion of Adams' testimony was not harmless beyond a reasonable
    doubt because Adams' testimony, if believed by the jury, would have raised reasonable
4   doubt in the jury,s [sic] mind.

5   [Petition, Docket No. 1.]

6        Respondent asserts that Petitioner has neither shown that the state courts unreasonably applied

7   clearly established federal law, nor shown that the state court decisions were based on an unreasonable

8   determination of the facts.  Accordingly, Respondent requests that this court deny the petition.

9        This Court has reviewed the Petition ("Pet."), Respondent's Answer, and all supporting

10  documents.  Petitioner did not file any documents in response to Respondent's Answer.  After a through

11  review of the record, the Court concludes Petitioner is not entitled to the relief requested and

12  **RECOMMENDS** that the Petition be **DENIED**.

13  **II.     PROCEDURAL BACKGROUND**

14       On June 20, 2008, a San Diego County jury found Petitioner guilty of selling cocaine base (Cal.

15  Health & Safety Code § 11352(a)) and possession of cocaine base for sale (Cal. Health & Safety Code §

16  11351.5).  (CT 27-28.)[1]  The trial court found true the allegation that Petitioner had been previously

17  convicted of drug sales (Cal Pen. Code § 11370.2(a)) on two occasions.  (CT 138-40; 3 RT 517-19.)

18  Petitioner admitted a prison prior (Cal. Pen. Code§ 667.5(b)) and a strike prior (Cal. Pen. Code § 667(b),

19  (I)).  (3 RT 487-89, 498-99.)  He was tried with co-defendant Marcus Costner.  Costner was also found

20  guilty of both counts.  (3 RT 472-73.)  On October 6, 2008, the trial court sentenced Petitioner to eight

21  years in prison.  (CT 102; 3 RT 555.)

22       Petitioner appealed his conviction to the California Court of Appeal, Fourth Appellate District,

23  Division One.  On September 4, 2009, in an unpublished opinion, the California Court of Appeal denied

24  Petitioner's appeal.  (Lodgment 7.)   The Court of Appeal held: "We need not determine whether the

25  trial court abused its discretion or violated Harris's constitutional rights because we conclude that the

26  preclusion of Adams's testimony did not prejudice Harris, even under the heightened standard of

27

28       [1]"CT" refers to the Clerk's Transcript of trial proceedings, contained in Lodgment 1, and"RT" refers
    to the Reporter's Transcript of trial proceedings, contained in Lodgment 3.

1  prejudice we must apply to claims of constitutional error."  (Lodgement 7 at 10.)  The Court of Appeal

2  applied the "harmless beyond a reasonable doubt" standard under *Chapman v. California*, 386 U.S. 18

3  (1967) and determined that, if the exclusion was in error, it was harmless beyond a reasonable doubt.

4  (*Id.*)  Petitioner then filed a petition for review in the California Supreme Court.  (Lodgment 8.)  The

5  California Supreme Court denied the petition for review on December 17, 2009, in a summary order

6  without citation or explanation.  (Lodgment 9.)  Petitioner did not seek further review from the United

7  States Supreme Court or collateral relief in the state courts.  Petitioner filed the current Petition on

8  October 25, 2010.

9  **III.    FACTUAL BACKGROUND**

10           **A.    Facts of the Arrest**[2]

11           At approximately 11:00 p.m. on January 3, 2008, San Diego Police Detective Michael Day took

12  part in a narcotics sting operation on C Street in San Diego.  Detective Day, working undercover,

13  walked along C Street between Seventh and Eighth Avenues.  Day encountered Costner and told

14  Costner that he wanted to buy drugs.  Costner asked, "Do you have a pipe?"  When Day responded that

15  he did not have a pipe, Costner said, "Give me your money, I'll get it for you if you share it with me."

16           Detective Day handed Costner a prerecorded $20 bill.  Costner took the money and walked

17  across the trolley tracks to the other side of the street, while Day followed behind.  Costner approached a

18  tan Chevrolet Impala.  Stacey Adams was seated in the driver's seat, and Harris was in the passenger

19  seat.  An individual identified as Issa was sitting in the backseat.  Costner knelt down near the passenger

20  side of the car and spoke with Harris through the open car window.

21           Day witnessed Harris place a small object in Costner's hand.  Costner walked to a lit area and

22  inspected the object.  He then returned to the Impala and handed Harris a $20 bill.  Costner returned to

23  Day and handed him the object, which Day recognized as cocaine base.  After Costner handed him the

24  cocaine base, Day gave the prearranged arrest signal.

25           The car in which Harris was riding drove away.  However, a uniformed officer stopped the car a

26  few blocks away from the scene.  The officer searched Harris and found his cellular telephone and three

27  _____

28           [2]This statement of the facts is taken verbatim from the unpublished opinion of the California Court of Appeal.  (Lodgment 7.)

1   $20 bills, one of which was the prerecorded  $20 bill that Day had given to Costner.  While officers

2   were in the process of arresting Harris, his cellular telephone rang seven times.

3          A uniformed officer arrested Costner and found a cocaine pipe and $2.00 in his possession.

4          Officers later searched the Impala and Harris's nearby motel room.  They found a small piece of

5   rock cocaine in the vehicle, and $794 in cash in the motel room. (Lodgment 7 at 3-4.)

6          **B.      Facts of the Trial and the Exclusion of Testimony**

7          At the end of the first day of trial, while discussing scheduling, the trial court asked both defense

8   counsel if they planned to present any affirmative evidence.  Petitioner's counsel said that due to a "late

9   development" he may have one witness.  The prosecutor objected that she had not received any

10  discovery about a defense witness.  Defense counsel said: "It's so – it's substantial – now, I can't say

11  anything more than I have, Your Honor.  I regret that.  But that's where we are."  (1 RT 173.)  The next

12  morning, the trial court asked again if the defense intended to call a witness and the following colloquy

13  took place:

14          Mr. Berman:   Your Honor, just as of late yesterday, I have finally learned that the other
             original arrestee, Stacy Adams, is available and willing to testify.  And I have her under

15          subpoena. . . . I gave copies of [the investigator's] one page report on his interview of Ms.
             Adams to the attorneys.  And the report, somewhat, I think is self-explanatory that this is

16          something that we had been working on for a while but didn't come to fruition to the
             point where we learned that she was available and willing to testify until just late

17          yesterday, and that – therefore, I offer that as an explanation of the late stage of the trial
             in which this comes up. . . .

18
            The Court: Thank you.  So as the Court understands it, the witness became available just

19          within the last day or so?

20          Mr. Berman:  That's Exactly Right

21  (2 RT 176.)  The Court then asked the prosecutor if she had any concerns and she responded that she

22  was very concerned and wanted to know whether counsel had been diligent in pursuing Ms. Adams as a

23  witness.   The prosecutor noted  that Ms. Adams was listed on the police report and told the police that

24  she was the girlfriend of Mr. Harris.   The people objected to the late evidence and pointed out that

25  defense counsel had been deliberately vague the day before in not informing the people that he was

26  searching for Ms. Adams.  Finally, the prosecutor asked to be able to speak with Ms. Adams prior to any

27  testimony.  (2 RT 177-79.)

28          The Court again addressed the issue of testimony from Ms. Adams the next day.  Mr. Berman

4

1  represented to the court that Ms. Adams had not been Petitioner's girlfriend for "some time"; that he

2  "had trouble even locating her" and had "been informed that she was uncooperative." (2 TR 232-233.)

3  He candidly admitted to the court: "I'm not particularly desirous of calling her in any event because I

4  feel that there's more to lose than gain in doing so.  But I'm doing it at my client's insistence."  (2RT

5  233.)  The Court indicated that it was not inclined to exclude Ms. Adams because he did not find a

6  violation of the discovery requirements.  (2 RT 234.)  At that point, Ms. Vandenbosch, counsel for co-

7  defendant Costner, joined the prosecutor's motion to exclude the testimony.  Ms. Vandenbosch argued

8  that the new report contained facts different from Ms. Adam's statement to the police and inconsistent

9  with the evidence as Ms. Vandenbosch represented in her opening statement.  (2 RT 235.)  The trial

10  judge indicated that he would have consider the argument that Defendant Costner's due process rights

11  would be infringed by allowing Ms. Adams to testify.  (2 RT 236.)

12         After lunch that day, the court again returned to the question of Ms. Adams after all counsel had

13  spoken with Ms. Adams.  The prosecutor stated that she had learned from Ms. Adams that she has lived

14  at the same address, was willing to testify at all times, was never uncooperative, and had not been

15  contacted until the day before.  (2 RT  284.)  Based on these facts, the prosecutor argued that Petitioner

16  had not been diligent in seeking Ms. Adams' testimony and the testimony should, therefore, be excluded.

17         Ms. Vandenbosch told the court that the only prior effort to contact Ms. Adams was by an

18  investigator who spoke to a family member of Ms. Adams.  The family member stated that Ms. Adams

19  might not want to testify.  The investigator apparently made no further efforts to see if Ms. Adams

20  would testify until after the start of trial.  (2 RT 285.)[3]  Ms. Vandenbosch argued that Ms. Adams should

21  not be allowed to testify in a manner inconsistent with her prior statement and the evidence as relied

22  upon in opening statements and cross examination.  Ms. Vandenbosch also argued that she would have

23  made a motion to sever the trials of the two defendants if she had known they would have inconsistent

24  defenses.

25

26         [3]Mr. Berman insisted that, despite what the investigators reported to the other attorneys, they had
27  informed him that Ms. Adams had been uncooperative and had been unwilling to meet with his
   investigators. (2 RT 288.) Mr. Berman concluded that "apparently there's just some misunderstanding" and
28  affirmed "I stand by my previous representation as to my understanding of Ms. Adams's initial
   uncooperativeness and now willingness to testify." (2 RT 289.)

1    Ms. Adams told the police on the day of the incident that she had been starting the car and did

2    not see what happened between Mr. Harris and Mr. Costner because she was not paying attention.  The

3    investigator's report, however, indicated that Ms. Adams was going to testify that Mr. Harris had given

4    Mr. Costner two one dollar bills.  Ms. Vandenbosch argued that the inference from Ms. Adams'

5    testimony was that Mr. Costner had the drugs all along, leading the two defendants to have inconsistent

6    defenses.  (2 RT 287-88.)  Ms. Vandenbosch concluded that allowing the testimony would violate Mr.

7    Costner's due process right to a fair trial.

8    The prosecutor agreed that the two statements were inconsistent.  Mr. Berman would not

9    concede that the statements were inconsistent, but he did admit that the new statement  "added a lot of

10   information."  He did admit:

11
     > I recognize that in proffering Ms. Adams as a witness, I am in a position of vouching for

12   > her testimony, and I'm uncomfortable, frankly, doing that.  I feel I'm kind of in a position
     > of the theoretical lawyer who is asked to put his client on the stand to give an account

13   > that the lawyer does not believe is true and has to do it as a narrative.

14   (2 RT  290-91.)  Mr. Berman also stated that he was unsure as to whether Ms. Adams would testify that

15   Mr. Harris had given Mr. Costner two dollars because he thought she would testify that Harris had given

16   Costner change for a twenty.  Mr. Berman then said:

17   > Of course, it's obvious that he didn't have change for a twenty on him when he was
     > arrested.  So that's problematic, to put it mildly.  Which I explained to Mr. Harris and

18   > said
     > that I would – really would prefer not to call her, but Mr. Harris has instructed me to call

19   > her, so I don't have any – any option, as I see it.

20   (2RT 291-92.)

21   The trial judge decided that the witness statement disclosed after the start of trial was contrary to

22   the statement given by Ms. Adams to the police and provided as discovery.  The judge also found that

23   this statement, if disclosed in a timely manner, would have been grounds for a motion to sever and was

24   grounds for Costner to change his theory of the defense.  The judge then found, based upon the close

25   relationship between Mr. Harris and Ms. Adams and the fact they lived at the same address, that

26   Petitioner had information about Ms. Adams sooner than the second day of trial. The Court found:

27   > based on a violation of 1054, based on the due process argument as submitted by the
     > defense for Mr. Costner, as well as assessment made as to the value of this testimony and

28   > the request made by Mr. Harris without his counsel's support, but through his counsel,
     > the Court finds that the evidence of and the proffered testimony must be excluded.

1    Therefore, the Court does sustain the objection and grants the motion to exclude as to
     both the People and as to the defendant Mr. Costner.
2    (2 RT 327.)

3    **IV.    LEGAL STANDARDS**

4          **A.    Unreasonable Application of Law or Determination of Facts**

5          The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Petition.  *See*

6    *Lindh v. Murphy*, 521 U.S. 320, 336-337 (1997).  Under AEDPA, a federal court will not grant habeas

7    relief with respect to any claim adjudicated on the merits in state court unless the decision was (1)

8    contrary to or involved an unreasonable application of clearly established federal law; or (2) based on an

9    unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d); *Early v.*

10   *Packer*, 537 U.S. 3, 7-8 (2002).

11         A case is "contrary to" federal law if it either: (a) applies a rule different from the governing law

12   set forth in Supreme Court cases; or (b) decides a case differently than the Supreme Court on a set of

13   materially indistinguishable facts.  *Bell v. Cone*, 535 U.S. 685, 694 (2002).  A case involves an

14   "unreasonable application" of federal law if  the state court correctly identifies the governing legal

15   principle from Supreme Court decisions but unreasonably applies those decisions to the facts at issue.

16   *Id.*  "Clearly established federal law," for purposes of § 2254(d), means "the governing principle or

17   principles set forth by the Supreme Court at the time the state court renders its decision."  *Lockyer v.*

18   *Andrade*, 538 U.S. 63, 71-72 (2003).

19         The state court decision must be more than incorrect or erroneous; to warrant habeas relief the

20   state court's application of "clearly established federal law" must be "objectively unreasonable."

21   *Lockyer*, 538 U.S. at 75.  "Objectively unreasonable" differs from "clear error" in that a federal court

22   cannot grant habeas relief merely because it believes that the state court erroneously or incorrectly

23   applied "clearly established federal law;" the application must be objectively unreasonable.  *Id.* at 75-76

24   (internal citation omitted).  Even a "firm conviction" that the state court was "erroneous" is insufficient;

25   a federal habeas court can only issue the writ when the state court's application of federal law was

26   "unreasonable."  *Id.*; *see also Inthavong v. Lamarque*, 420 F.3d 1055, 1061 (9th Cir. 2005)("It is an

27   'unreasonable application' of precedent if it is 'objectively unreasonable,'  which is more than being

28   merely, or even clearly, incorrect.")

If the state supreme court silently denies a petitioner's appeal with a summary dismissal, the reviewing federal habeas court must look through to the last reasoned state court opinion in making a decision.  *See Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).  Here, the "last reasoned" state court decision was written by the California Court of Appeal.  [Lodgement 7.]

**B.      Substantial and Injurious Effect on Verdict**

Even if exclusion of the evidence amounts to constitutional error, in order to justify federal habeas relief the erroneous exclusion must have had "a substantial and injurious effect" on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 623  (1993).  "To grant relief where a state court has determined that a constitutional error was harmless, we must both determine (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under Brecht from the constitutional error." *Inthavong v. Lamarque*, 420 F.3d 1055, 1059 (9th Cir. 2005).  Because both tests must be satisfied before any relief can be granted, courts are free to take either issue first.  *Id.* at 1061.

**V.      DISCUSSION**

The California Court of Appeal declined to reach the question of whether the trial court wrongfully excluded the testimony of Ms. Adams.  Instead, the court found that any error was harmless beyond a reasonable doubt.  The California Court of Appeal's decision is not contrary to federal law, does not constitute an unreasonable application of federal law, and is not an unreasonable determination of the facts.

**A.      The Exclusion of Evidence Did Not Have a Substantial and Injurious Effect**

Because the evidence against Petitioner was overwhelming, the exclusion of Ms. Adams' testimony did not have a substantial and injurious effect on the jury verdict.  As the Court of Appeals noted,  "overwhelming evidence that Harris took part in a drug sale with Costner" was presented at trial. (Lodgment 7 at 10.)  Detective Day witnessed Petitioner sell Costner $20 worth of cocaine base. Detective Day gave Costner a marked $20 bill in order to buy cocaine.  (1 RT 95.)  He then watched from 30 to 35 feet away as Costner approached Petitioner.  (1 RT 103.)  Petitioner handed Costner a small object that appeared consistent with a rock of cocaine.  (1 RT  109.)  Costner walked about ten feet and inspected the object under better light.  (1 RT 109.)  Costner then walked backed to Petitioner

1   and gave him the marked $20 bill.  (1 RT 111.)  Costner then gave Detective Day $20 worth of cocaine

2   base.  (1 RT 115.)  When appellant was searched immediately after the transaction, he had the marked

3   $20 bill in his pants pocket.  (2 RT 239.)  Petitioner also had other indications of drug sales in his car

4   and motel room, including almost $800 in cash, a cell phone which recorded seven missed calls while

5   police officers were present, and a small but usable  amount of narcotics referred to as "kibbles" or

6   "crumbs."  (2 RT 198, 241, 260, 277, 280.)

7        Moreover, Adams' proposed testimony was inconsistent with both her prior statement and the

8   evidence.  As the state appellate court noted:

9        On the night of the incident, Adams told police that she did not know what had happened
       because she had not been paying attention.  However, according to Harris's investigator's
10       report of his interview with Adams, Adams intended to testify at trial that Harris had
       given Costner money, not drugs.  Although it is not totally clear from the record,
11       Adams's new version of events seemed to be either that Harris had given Costner change
       for a $20 bill, or that Harris gave Costner two $1 bills.  Either story was inherently
12       suspect, particularly in view of Day's testimony that Costner stepped into the light to
       view whatever Harris had given him before he returned to give Harris the marked $20
13       bill, and that the object Harris handed to Costner was much smaller than paper bills.
       Further, neither version was plausible in light of what police found in the defendants'
14       possession immediately after the incident:  Costner did not have change for a $20 bill in
       his possession, and although Costner did have two $1 bills, Harris had in his possession
15       the marked $20 bill that Day had given Costner.

16   (Lodgment 7 at 11.)  The state appellate court  also noted that Ms. Adams was further subject to

17   impeachment by her admission, in connection with her guilty plea, that she unlawfully possessed drugs

18   on the night in question.  Finally, the state court relied upon the fact that Harris' attorney did not believe

19   that the testimony would have been helpful.  (Lodgment 7 at 12, 2 RT 233, 290-92.)

20        Petitioner argues that the exclusion of Adams' testimony "was not harmless beyond a reasonable

21   doubt because Adams' testimony, if believed by the jury, would have raised reasonable doubt in the

22   jury,s [sic] mind."  [Pet. at Ground 7, p. 14.]  Petitioner explains: "Precisely because Adams did not

23   testify, the People cannot prove beyond a reasonable doubt her testimony would not have changed the

24   verdict."  [*Id.*]  Petitioner is mistaken.  If Petitioner were correct, it would always be impossible to

25   prove that excluded testimony would not have changed the verdict.  The Supreme Court,  however, has

26   held that it is possible to prove beyond a reasonable doubt that excluded testimony would not have

27   changed a verdict. *Fry v. Pliler*, 551 U.S. 112, 116-122 (2007)(applying Brecht standard to exclusion of

28   evidence); *see also e.g.  Cannedy v. Cate*, 2010 WL 5464167 ©. D. Cal. Nov. 10, 2010)(exclusion of

1   testimony found harmless error); *Jackson v. Ryan* 2009 WL 4042910 (D. Ariz. Nov. 18, 2009)(exclusion

2   of prior crimes and bad acts by codefendant harmless error); *Moore v. Cate*, 2009 WL 559836 (March 4,

3   2009, S. D. Cal.)(exclusion of evidence did not have substantial and injurious effect); *Peevy v. Harrison*,

4   2007 WL 2758042 (E. D. Cal. Sep. 21, 2007)(exclusion of third party culpability evidence was harmless

5   error.)

6        Petitioner also argues that the jury was prevented from hearing "substantial exculpatory

7   testimony" and that Adams' testimony that Petitioner gave Costner change would explain Petitioner's

8   possession of the  prerecorded $20 bill.  As described above, however, Adams' testimony was

9   inconsistent with the evidence because when Costner was arrested *immediately* after interacting with

10  Petitioner, he only had $2 on his person.  Moreover, Adams' testimony was also inconsistent with her

11  prior statement to the police.  Finally, any testimony that Petitioner merely made change for Costner

12  would also have been inconsistent with Officer Day's testimony that Costner examined the object

13  Petitioner gave to him before handing over the money.  Officer Day testified that white males are often

14  sold "bunk" or fake narcotics, which causes the buyer to inspect the object they are being sold prior to

15  handing over the money. (1 RT 114.)

16       Because of the overwhelming evidence of guilt as well as the limited value of the testimony

17  excluded, the state court's determination that any error was "harmless beyond a reasonable doubt" was

18  not an unreasonable determination of federal law.   The state court examined the alleged constitutional

19  error under the "harmless beyond a reasonable doubt" standard of *Chapman v. California*, 386 U.S. 18

20  (1967).  The court applied the correct rule, reasonably applied the rule to the facts of the case, and made

21  a not unreasonable determination of facts.  Moreover, the exclusion of Adams' testimony  did not have a

22  "substantial and injurious effect or influence in determining the jury's verdict" under *Brecht v.*

23  *Abrahamson*, 507 U.S. 619 (1993).

24        **B.    Alleged Violations of State Law**

25       Petitioner asserts several claims that appear to assert violations of California law.  In Ground 1

26  of the Petition, Petitioner claims that the trial court violated "state law and appellant's constitutional

27  right to present a defense" when it precluded Adams' testimony without finding a willful violation of the

28  discovery rules.  [Pet. at 6.]  Similarly, Petitioner asserts: in Ground 2, that the trial court should not

have considered prejudice to his co-defendant [Pet at 9.]; in Ground 3, that he did not willfully violate the discovery rules [Pet. at 10.]; in Ground 4, the People would not have been irremediably or significantly prejudiced by the late notice of his intent to call Adams as a witness [Pet. at 11.]; and in Ground 5 the trial court's weighing of the harm to his co-defendant was "improper under California law" [Pet at 12.].

A violation of state law does not ordinarily provide a basis for habeas relief. "A federal habeas court cannot review questions of state evidence law." *Spivey v. Rocha*, 194 F.3d 971, 977 (9th Cir. 1999). As the Supreme Court has stated: "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991). Accordingly, the state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it rendered the state proceedings so fundamentally unfair as to violate due process. *Drayden v. White*, 232 F.3d 704, 710 (9th Cir. 2000).

Accordingly, to the extent that Petitioner intended to assert claims for violations of California law, such violations are not cognizable during habeas review. The only question before the federal habeas court is whether a state court's evidentiary ruling was so fundamentally unfair as to violate due process. As described in detail above, the exclusion of Adams' testimony was harmless and did not have a substantial impact on the jury's decision and, therefore, could not have rendered the trial fundamentally unfair.

//
//
//
//
//
//
//
//
//

11

## VI.    CONCLUSION AND RECOMMENDATION

Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the Petition for Writ of Habeas Corpus be **DENIED**.

**IT IS ORDERED** that no later than  **April 1, 2011** any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 11, 2011.**   The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998);  *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).


DATED:  March 10, 2011

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court